**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 14-cv-62024-WJZ**

**DASHA WRIGHT, FERNANDO MARTINEZ,**
**and others Similarly-situated,**

**Plaintiffs,**

**v.**

**TRAVELLOOGA, LLC *et. al.*,**

**Defendants.**

**_________________________________________/**

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW**

Plaintiffs, **Dasha Wright** (hereinafter referred to as "Wright") and **Fernando Martinez** (hereinafter referred to as "Martinez")(collectively "Plaintiffs") by and through undersigned counsel, and pursuant to Federal Rule of Civil Procedure 56 and Local Rules, hereby files this Response in Opposition to Defendants **Travellooga, LLC** (hereinafter referred to as "Travellooga") and **Richard Franken** (hereinafter referred to as "Franken")(collectively "Defendants") Motion for Summary Judgment. In support, Plaintiffs state as follows:

1. There exists evidence of disputed material facts as to Defendants' contention that Wright fails to have a claim for wages pursuant to the Florida Minimum Wage Act ("FMWA") or the Fair Labor Standards Act ("FLSA"). In dispute is whether Wright was properly compensated for all regular *or* overtime hours worked. Further, the evidence reveals that Franken had knowledge of the underpayment where he instructed Wright to underreport work hours and, as a result, failed to properly pay Wright.
2. Secondly, Defendants' fail to affirmatively prove, as a matter of law and in the light most favorable to Martinez, that he is plainly and unmistakably an independent contractor.

Rather, the evidence wholly disputes this purported label and demonstrates that Franken, in his ownership and supervisory capacities, exerted total control over Martinez's day-to-day conduct. Argued *infra,* an analysis of the remaining factors of Martinez's economic reality heavily supports employee status.

3. Finally, the evidence in this matter reveals that Plaintiffs made repeated complaints to Franken about improper pay. The non-payment issues deteriorated to such a degree that Plaintiffs threatened to contact the Department of Labor in November 2012, no more than three months before the constructive discharge, to remedy the situation. Despite this, Franken continued to withhold wages and utilized his position to threaten, harass, and demean Plaintiffs. This venomous treatment yielded only one avenue of relief for Wright and Martinez: forcibly resign. As such, the evidence disputes Defendants' argument and clearly illustrates the necessary elements to establish a *prima facie* case of FLSA retaliation.

**WHEREFORE**, Plaintiffs, based on the numerous material facts in dispute, failure of Defendants' to prove as a matter of law the defenses to filed claims, and in the light most favorable, respectfully requests that this Honorable Court enter an Order **DENYING** Defendants' Motion for Summary Judgment in this entirety.

## I. STATEMENT OF MATERIAL FACTS

Disputed Material Facts in Opposition to Defendants' Statement of Material Facts and Plaintiffs' Statement of Facts is separately filed (cited collectively as "SMF ¶__").

## II. STANDARD OF REVIEW

In review of a motion for summary judgment, the Court is guided by Federal Rule of Civil Procedure 56(a). The moving party bears the burden of meeting this exacting

standard. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986). That is, "[t]he moving party bears 'the initial responsibility of informing the...court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" *U.S. vs. Four Parcels of Real Prop.,* 941 F.2d 1428, 1437 (11th Cir. 1991) (*quoting Celotex,* 477 U.S. at 323). In assessing whether the moving party has satisfied this burden, the Court is required to view the evidence and all factual inferences arising therefrom in the ***light most favorable to the non-moving party***. *Batey v. Stone,* 24 F.3d 1330, 1333 (11th Cir. 1994)(emphasis added). The court must, "avoid weighing the conflicting evidence or making credibility determinations." *Hilburn v. Murata Elecs. N. Am. Inc*., 181 F.3d 1220, 1225 (11th Cir. 1999). Rather, the determination is whether there are any genuine issues of fact that should be properly resolved by the fact finder because they cannot be resolved in favor of either party. *Anderson v Liberty Lobby, Inc*., 477 U.S. 242 (1986).

## <u>ARGUMENT AND MEMORANDUM OF LAW</u>

### I. SUMMARY JUDGMENT IS INAPPROPRIATE AS THERE EXISTS DISPUTED ISSUES OF FACT AS TO WHETHER WRIGHT WAS PAID FOR ALL HOURS

If an employee has worked overtime without pay, he may bring a private FLSA action for damages. *See* 29 U.S.C. § 216(b). An unpaid-overtime claim has two elements: (1) an employee worked unpaid overtime, and (2) the employer knew or should have known of the overtime work. *Allen v. Bd. of Pub. Educ. for Bibb Cnty*., 495 F.3d 1306, 1314-15 (11th Cir. 2007). Knowledge may be imputed to the employer when its supervisors or management "encourage[] artificially low reporting." *See id*. at 1319; *Brennan v. Gen. Motors Acceptance Corp*., 482 F.2d 825, 828 (5th Cir. 1973) ("The company cannot disclaim knowledge when certain segments of its management squelched truthful responses.").

Unfortunately for an employee like Wright, the issue of uncompensated, off-the-clock work at the behest of the employer is not novel. Recently, the Eleventh Circuit in *Baily v. TitleMax of Georgia, Inc.* appellate case no.: 14-11747 (11th Cir. January 15, 2015) was faced with a similar issue as Plaintiffs. In *Bailey,* the plaintiff, at the direction of his supervisor, regularly worked off the clock resulting in inaccurate time records. TitleMax argued that Bailey's off-the-clock work, and alleged non-reporting of the same and his supervisor, violated company policy. The district court granted summary judgment in favor of TitleMax and was later reversed by the Eleventh Circuit. The rationale for reversal was the Eleventh Circuits' rejection of the company's equitable defenses based on the prior holdings in *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1314-15 (11th Cir. 2007) and *Brennan v. Gen. Motors Acceptance Corp.*, 482 F.2d 825, 828 (5th Cir. 1973).

Put succinctly, the Eleventh Circuit states:

> If an employer knew or had reason to know that its employee underreported his hours, it cannot escape FLSA liability by asserting equitable defenses based on that underreporting. To hold otherwise would allow an employer to wield its superior bargaining power to pressure or even compel its employees to underreport their work hours, thus neutering the FLSA's purposeful reallocation of that power.

The facts of *Bailey* are analogous here. Wright testifies that she was unable to record her complete, total work hours at the direction of Franken. SMF ¶ 4. For the first three months of her employment, the standing instruction at Travellooga, by Franken, was for Wright to handwrite her work hours on a paper timesheet. SMF ¶ 4. Afterward the initial three months, Franken required Wright to send text messages him of her work hours. SMF ¶ 4. These records lack accuracy and cannot be accepted as a true picture of Wright's work hours insofar Franken *told Wright what to input*. SMF ¶ 4. To wit, any hours nearly approaching, or exceeding, forty

hours in a week could not be recorded in full. *Id.* As such, the number of hours worked remains in dispute.

As the Eleventh Circuit held in *Bailey,* along with the *Allen* and *Brennan* decisions, an employee like Wright should not be deprived of her wage and hour claims simply because she was instructed by her employer to underreport her work time. Based on the material dispute as to whether all the work hours were recorded and knowledge by Franken of underreporting, the *Bailey* decision directs this Court to enter an Order denying summary judgment on Wright's FLSA/FMWA, off-the-clock claims.

## II. WRIGHT SUBMITS JUST AND REASONABLE EVIDENCE OF THE AMOUNT OF UNCOMPENSATED WORK HOURS

Assuming, *arguendo*, that this Court deviates from *Bailey*, Wright sufficiently disputes the amount of unpaid off-the-clock work at Travellooga. In the Motion, Defendants argue that Wright was paid according to the handwritten timesheets and text messages. However, if Wright is unable to record all her work hours, then it necessarily follows that she cannot be paid for all hours worked. SMF ¶ 4. Tellingly, Defendants fail to attach a single timesheet or text message that purports to be a record of Wright's work hours. Rather, Defendants' inartfully passes this burden onto Wright by stating that she and Martinez conspired in taking the personnel files. This position is unsupported and completely disputed by Wright and Martinez. SMF ¶ 4. Even if Wright took the handwritten timesheets from her personnel file (which she completely denies), she certainly could not be in possession of the cell phone containing the text messages. Even if Defendants' produced records on Wright's work hours (which they have not), the underreporting instruction evidences a failure to keep adequate records. *See Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680 (1946).

To recover under the FLSA, an employee must initially allege a statutory violation and

produce evidence to show the nature and extent of the work performed as a matter of just and reasonable inference. *See Id.* at 687. Where the employer has not kept such records, the court must look to other evidence. *Id.* Them the employer may then come forward with its own evidence or seek to negate the employee's testimony. *Id.*

The Eleventh Circuit has summarized this burden-shifting framework:

> The **FLSA** places upon the employee-plaintiff "the burden of proving that he performed work for which he was not properly compensated." *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 686-87 (1946) ***However, if the employer failed to keep time records, as in this case, that burden is relaxed.*** Specifically, in that circumstance an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the *precise amount of work performed* or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate. *Id.* at 687-88.

*Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F. 3d 1299, 1315 (11th Cir. 2013)(emphasis added). Employees, like Wright who testify to the amount of unpaid hours from memory, may recover even though the amount may be uncertain and the damages difficult to calculate. *Washington v. Miller,* 721 F.2d 797, 803 (11th Cir. 1983) (farmworker employees met their prima facie burden for recovery under the FLSA despite the fact that "[t]estimony as to the hours worked varied widely and was often confused and contradictory"); *Reeves v. Int'l Tel. & Tel. Corp.,* 616 F.2d 1342, 1352 (5th Cir.1980)(employee established his claim with estimates of hours based upon "the rough computations of his subconscious mind"); *Marshall v. Mammas Fried Chicken, Inc.,* 590 F.2d 598, 599 (5th Cir.1979) (employee met prima facie burden with evidence that was demonstrably inaccurate, as the inaccuracy was due to the employer's failure

to keep more accurate records).

Parallel to Wright's claim is the case is the recent decision in *Bautista Hernandez v. Tadala's Nursery, Inc.,* 34 F. Supp. 3d 1229 (S.D. Fla. 2014). In *Bautista*, the plaintiff sought to be compensated for piecework that amounted to ten hours per week. The Court noted that the number of hours worked "lacked mathematical precision", but found that it was "…a fair and reasonable approximation of his piece-work labor." *Bautista*, at 1234. The same conclusion should be found here. First, Wright provides more for information on her daily schedule and weekly hours than the plaintiff in *Bautisa*. SMF ¶¶ 16-17; Wright Aff. ¶¶10-13. Wright testifies that from May 20, 2012 through October 2012, both her and Martinez worked for Defendants at small office in Beach Place Ft. Lauderdale, Florida. SMF ¶ 16. At the smaller office, Wright and Martinez worked Monday through Saturday, approximately fifty-two to fifty-three hours per week. SMF ¶ 16. Then, starting October 2012, Franken moved the business to a larger office on the third floor of Beach Place. SMF ¶ 17. When the business moved, Wright and Martinez continued to Monday through Saturday with work hours being approximately fifty-seven to fifty-eight hours per week. SMF ¶ 17. This testimony certainly paints a reasonable picture of weekly hours. By instructing Wright to underreport work hours, Defendants will be unable to rebut the off-the-clock claims. SMF ¶ 4. At the very least, the dispute as to Wright's total amount of work hours precludes summary judgment.

## III. SUMMARY JUDGMENT IS INAPPROPRIATE WHERE DISPUTED ISSUES OF MATERIAL FACTS EXIST AS TO WHETHER MARTINEZ WAS AN INDEPENDENT CONTRACTOR OR EMPLOYEE

Congress passed the FLSA "to lessen, so far as seemed then practicable, the distribution in commerce of goods produced under subnormal labor conditions." *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 727 (1947). The FLSA's overtime and minimum wage protections were

the "method chosen to free commerce from the interferences arising from production of goods under conditions that were detrimental to the health and well-being of workers." *Id.* These protections, however, extend only to "employees," a term defined broadly in the Act. 29 U.S.C. §§ 206, 207. An "employee" is "any individual employed by an employer." *Id.* § 203(e)(1). An "employer" "includes any person acting directly or indirectly in the interest of an employer in relation to an employee." *Id.* § 203(d). The term "employ" "includes to suffer or permit to work." *Id.* § 203(g). These definitions are intended to be "comprehensive enough" to include "working relationships, which prior to this Act, were not deemed to fall within an employer-employee category." *Rutherford Food,* 331 U.S. at 729 (*quoting Walling v. Portland Terminal Co.*, 330 U.S. 148, 150-51, 67 S. Ct. 639, 640 (1947)).

To determine whether an individual falls into the category of covered "employee", this Circuit looks to the "economic reality" of the relationship between the alleged employee and alleged employer and whether that relationship demonstrates dependence. *Scantland, et. al. v. Jeffrey Knight, Inc., et al.* case no. 12-12614 (11th Cir. 2013) *quoting Bartels v. Birmingham*, 332 U.S. 126, 130 (1947) ("[E]mployees are those who as a matter of economic reality are dependent upon the business to which they render service."); *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33, 81 S. Ct. 933, 936 (1961) (referencing "'economic reality' rather than 'technical concepts'" as the "test of employment"); *Aimable v. Long & Scott Farms, Inc.*, 20 F.3d 434, 439 (11th Cir. 1994) ("To determine whether an employer/employee relationship exists for purposes of federal welfare legislation, we look . . . to the 'economic reality' of all the circumstances concerning whether the putative employee is economically dependent upon the alleged employer."). This inquiry is not governed by the "label" put on the relationship by the parties or the contract controlling that relationship, but rather focuses on whether "the work done, in its

essence, follows the usual path of an employee." *Rutherford Food*, 331 U.S. at 729. "[P]utting on an 'independent contractor' label does not take the worker from the protection of the Act." *Id.*; *see also Usery v. Pilgrim Equip. Co.*, 527 F.2d 1308, 1312 (5th Cir. 1976) ("It is not significant how one 'could have' acted under the contract terms. The controlling economic realities are reflected by the way one actually acts.").

Courts have applied various multifactor tests to guide the "economic reality" inquiry:

**1)** the nature and degree of the alleged employer's control as to the work to be performed;

**2)** the alleged employee's opportunity for profit or loss;

**3)** the alleged employee's investment in equipment or materials required for his task;

**4)** whether the service rendered requires a special skill;

**5)** the degree of permanency and duration of the working relationship; and

**6)** the extent to which the service rendered is an integral part of the alleged employer's business.

No one factor is controlling and this list is not exhaustive. The weight of each factor depends on the light it sheds on the employee's dependence on the purported employer, which in turn depends on the **facts** of the case. *See Antenor*, 88 F.3d at 933 (emphasis added).

While these factors serve as guides, the overarching focus of the inquiry is economic dependence:

> No one of these considerations can become the final determinant, nor can the collective answers to all of the inquiries produce a resolution which submerges consideration of the dominant factor—economic dependence. The . . . tests are aids—tools to be used to gauge the degree of dependence of alleged employees on the business with which they are connected. ***It is dependence that indicates employee status***. Each test must

> be applied with that ultimate notion in mind. More importantly, the final and determinative question must be whether the total of the testing establishes the personnel are so dependent upon the business with which they are connected that they come within the protection of FLSA or are sufficiently independent to lie outside its ambit.

*Usery*, 527 F.2d at 1311-12. Ultimately, in considering economic dependence, the court focuses on whether an individual is "in business for himself" or is "dependent upon finding employment in the business of others." *Mednick v. Albert Enters., Inc*., 508 F.2d 297, 301-02 (5th Cir. 1975).

**i. <u>Control</u>**

The first factor considers the nature and degree of the alleged employer's control as to the manner in which the work is to be performed. "Control is only significant when it shows an individual exerts such a control over a meaningful part of the business that she stands as a separate economic entity." *Usery*, 527 F.2d at 1312-13. The facts, viewed in the light most favorable to plaintiffs, indicate that Franken exercised significant control over Martinez such that he did not stand as a "separate economic entity" or was "in business for himself." SMF ¶ 3.

Franken controlled Martinez's work hours and the amount of work to be performed along with the housing situation for both Plaintiffs. SMF ¶ 3(a). Significantly, Franken controlled *how* Martinez completed his work. SMF ¶ 3(b). Martinez was required to use a preset PowerPoint presentation and selling script that was created, and enforced, by Franken. SMF ¶ 3(b). Franken even sat in on sales pitches to ensure his script was followed. SMF ¶ 3(b). Thus, the evidence shows that Martinez's work was tightly regulated by Franken with no discretion in how to approach, or execute, the job. SMF ¶ 3. *See Scantland,* 721 F.3d at 1315 *citing Lang v. DirectTV, Inc*., 801 F. Supp. 2d 532, 537-38 (E.D. La. 2011) (concluding that a material issue of fact existed regarding whether satellite company's instructions to installation technicians "went beyond providing mere technical specifications").

### ii. Opportunity for Profit or Loss

"The opportunity for profit and loss has more to do with relative investments, with control over larger aspects of the business, and with like forms of initiative." *Harrell v. Diamond A Entm't*, 992 F. Supp. 1343, 1351 (M.D. Fla. Nov. 28, 1997). In this suit, Defendants contend that Martinez's opportunity for profit or loss depended "upon how good he was at selling the product offered by Defendants". D.E. 24 at p. 3. However, earning of commissions at work is not dispositive of this factor trending towards independent contractor status. *Rezendes v. DOMENICK'S BLINDS & DECOR, INC.*, (M.D. Fla. 2015)(earning commissions does not indicate that Plaintiffs had the opportunity to earn additional income or profit through the exercise of managerial skill or increased efficiency).

Additionally, there is no indication in the record that Martinez had the opportunity to earn additional income or profit through the exercise of his managerial skill. Also, there is no evidence that Martinez invested in Travellooga nor Martinez did face a loss. Percentage points for commissions monies paid to Martinez were determined by Franken. SMF ¶ 3(c). Importantly, Franken controlled whether Martinez would be paid or not. SMF ¶ 3(c). *See Sakasci v. Quicksilver Delivery Sys.*, No. 8:06-cv-1297, 2007 U.S. Dist. LEXIS 88747, at *22 (M.D. Fla. Nov. 28, 2007)("because [defendant] controlled the factors primarily responsible for determining its [workers'] earnings, this factor weights in favor of finding an employment relationship"); *Molina v. S. Fla. Express Bankserv, Inc.*, 420 F. Supp. 2d 1276, 1286 n. 28 (M.D. Fla. 2006)(stating that when a business controls the primary factors governing its workers' earnings, employee status is suggested). In the light most favorable to Martinez, these facts weigh in favor of finding him an economically dependent individual like the "usual path of an employee." *Scantland,* 721 F.3d at 1317.

### iii. Investment in Equipment or Materials

In the Motion, Defendants do not state, at all, Martinez's investment in equipment or materials to sell the vacation memberships. Rather, Martinez testifies that he was not required to purchase any equipment or materials. SMF ¶ 3(e). Further, Martinez testifies that Franken provided the materials (script and PowerPoint) for selling the memberships. SMF ¶ 3(b) & (e). The failure to argue this factor, coupled Martinez's undisputed testimony, evidences that Plaintiff did not invest any capital in equipment or materials. This factor decidedly favors Martinez as being an employee.

### iv. Special Skill Required or Not

The next factor looks at whether the work conducted is specialized. Routine work requiring industry and efficiency is not indicative of independence and nonemployee status. *Robles v. RFJD HOLDING CO., INC.* case no.: 11-62069 (Dist. Court, SD Florida 2013)(Rosenbaum, J.) *citing Usery v. Pilgrim Equipment Co., Inc.*, 527 F. 2d 1308, 1314 (5th Cir. 1976). Generally, Courts look for some unique skill set, *Hopkins v. Cornerstone America*, 545 F. 3d 338 (5th Cir. 2008) *citing Carrell v. Sunland Constr., Inc.,* 998 F.2d 330, 332 (5th Cir. 1993), or some ability to exercise significant initiative within the business, *see Hopkins,* 545 F. 3d at 345 *citing Hickey v. Arkla Industries, Inc*. 699 F.2d 748, 752 (5th Cir. 1983). Here, however, the evidence reveals that Martinez's sales ability is not specialized or unique. SMF ¶ 3(d). Further, even if his selling ability was unique, he was not able to utilize it in independent fashion due to Franken's control over the selling process and pitch. SMF ¶ 3(b) & (d). *Molina*, 420 F. Supp. 2d at 1286 ("[E]ven if an individual has specialized skills, that is not indicative of independent contractor status where the individual does not use those skills in an independent fashion.")

In the plainest of readings, Martinez was simply a salesman. Martinez testifies that he did not need any prior special education, training, or certification. SMF ¶ 3(d). Instead, he was required to follow a script and PowerPoint for each presentation. *Id*. As such, Travellooga provided all the necessary tools and no special skill was brought *to* the position by Martinez. SMF ¶ 3(d) & (e). This evidences that Martinez's job does not require a specialized skill *See Pilgrim Equip*., 527 F.2d at 1314 (suggesting that general skills, "such as business sense, **salesmanship**, personality and efficiency," are not relevant to the employee-status inquiry)(emphasis added). Due to this control, Martinez's profits were based on efficiency (number of memberships sold) rather than his own skill or initiative on the selling process and lacked independence (since he was required to follow a script and PowerPoint). This factor favors employee status.

**v. <u>Permanency</u>**

The next factor is this Court's consideration of, "the degree of permanency and duration of the working relationship." *Scantland v. Jeffry Knight, Inc*., 721 F.3d 1308, 1312 (11th Cir. 2013). The working relationship between Martinez and Defendants lasted approximately nine months. However, Martinez's employment was cut short due to the retaliatory action by Franken (argued *infra*). In the Motion, Defendants argues that evidence was submitted to support that "Martinez was free to go work for other companies in his discretion." D.E. 24 at p. 4. Outside of one-sided, conclusory statements, no evidence is cited to show that Martinez had this purported freedom, actually utilized this purported freedom, and if utilized, the company(ies) Martinez allegedly went to work for while employed with Defendants. Martinez testifies that his lack of freedom derived from the amount of work required by Franken. SMF ¶ 3(a). This high workload did not permit him to work other jobs. SMF ¶ 3(a). Additionally, Franken controlled Wright and

Martinez's housing. SMF ¶¶ 3(f), 14. This control required Martinez to continue working at Travellooga, not at another company. SMF ¶¶ 3(f), 14. Although the employment period lasted for less than one year, there is evidence that this position was of a permanent nature. This factor leans in favor of employee status; and at the least, disputes Defendants' argument on permanency.

**vi. Integral Part of the Business**

The extent to which the task performed by the alleged employee was integral to the business of the employer is a factor indicating economic dependence. *Scantland,* 721 F.3d at 1319; *Harrell,* 992 F. Supp. at 1352. "Generally, the more integral the work, the more likely the worker is an employee, not an independent contractor." *Robles v. RFJD HOLDING CO., INC. citing Scruggs v. Skylink, Ltd.,* 2011 WL 6026152, at *8 (S.D. W.Va. Dec. 2, 2011). It is undisputed that Travellooga's business was to sell vacation club memberships to customers. In order to sell products, a company must employ salesman to do the job. Since Martinez provides the very selling services that allows Defendants' to earn revenue, his work is indisputably integral, if not essential, to the business. This factor weighs strongly in favor of finding Martinez an employee.

Based on the evidence cited in foregoing factors, there exist numerous disputed issues of fact as to the economic realities of Martinez's employment at Travellooga. Such disputes should not be resolved at the summary judgment stage and Defendants' Motion should be denied on the independent contractor defense.

## IV. <u>SUMMARY JUDGMENT IS INAPPROPRIATE WHERE DISPUTED ISSUES OF MATERIAL FACTS EXIST AS TO PLAINTIFFS' RETALIATION CLAIM</u>

Under the FLSA, employers are prohibited from:

> discharg[ing] or in any other manner discriminat[ing] against any

> employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

29 U.S.C. § 215(a)(3). "A prima facie case of FLSA retaliation requires a demonstration by the plaintiff of the following: '(1) she engaged in activity protected under [the] act; (2) she subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's activity and the adverse action.'" *Wolf v. Coca-Cola Co*., 200 F.3d 1337, 1342-43 (11th Cir. 2000).

**A. Evidence Supports That Plaintiffs' Engaged In Protected Activity**

The FLSA states that an employee engages in protected activity if he "files any complaint or institutes or causes to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding." 29 U.S.C. § 215(a)(3). The Eleventh Circuit has held that informal complaints concerning conduct that implicates the FLSA qualify as protected activity. *See EEOC v. White & Son Enters*., 881 F.2d 1006, 1011-12 (11th Cir. 1989) (finding that employees' informal complaints concerning unequal pay, which did not involve citation of the Equal Pay Act or the FLSA, constituted protected activity); *see also Debrecht v. Osceola County*, 243 F. Supp. 2d 1364, 1374 (M.D. Fla. 2003) (finding that employees' in formal complaints to employer concerning unpaid overtime constituted protected activity under the FLSA). In other words, the fact that an employee does not refer specifically to the FLSA does not mean an informal complaint is unprotected, so long as the complaint concerns the employer's wage and hour practices. *See McKenzie v. Renberg's, Inc*., 94 F.3d 1478, 1486-87 (10th Cir. 1996) ("In order to engage in protected activity under [the FLSA]), the employee must…engage in activities that reasonably could be perceived as directed towards the assertion of rights protected by the FLSA.")

In this suit, Plaintiffs allege that during their employment they orally complained to Franken because of his failure to properly pay wages. SMF ¶¶ 6, 8-10, 18. In November 2012, Wright informed Franken that if he did not start paying her and Martinez properly, she would contact the Department of Labor. SMF ¶ 10. The complaints continued on a weekly basis. *Id.* Thus, there is sufficient evidence to support the claim that both Plaintiffs engaged in protected activity as required by the FLSA anti-retaliation statute.

**B. Constructive Discharge is a Recognized Form of Adverse Employment Actions for FLSA Retaliation Claims**

Courts within the Eleventh Circuit have either assumed or decided that a constructive discharge may constitute an adverse employment action for purposes of showing retaliation under the anti-retaliation provisions of the FLSA. *See, e.g., Marshall v. Suicide Prevention of Florida,* No. WPB-76-8339-CIV-CF, 1977 WL 1766, at *8 (S.D. Fla. Aug. 1, 1977) (concluding that "defendants...violated the Fair Labor Standards Act by constructively discharging the employee."); *Barrera v. Valero Doral Inc.,* No. 10-cv-22982 (S.D. Fla. Jan. 11, 2012) (granting default judgment on Plaintiffs claims, which included a claim for retaliatory constructive discharge); *Burnette v. Northside Hosp.,* 342 F. Supp. 2d 1128, 1138 (N.D. Ga. 2004) ("Assuming an adverse employment action can be based on a theory of constructive discharge")(FLSA case). Furthermore, the Eleventh Circuit found constructive discharge to be a recognized adverse employment action under other federal statutes such as the ADEA *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1230 (11th Cir. 2001), and under § 1983, *Bryant* v. *Jones,* 575 F.3d 1281, 1298 (11th Cir. 2009).

After Christmas of 2012, Franken hired an individual named "Joey" to be his Director of Sales. SMF ¶ 18. Testimony reveals that Joey attempted to be a buffer between Plaintiffs and Franken in regards to wage complaints. (Wright Aff. ¶ 15). During January 2013, Joey

threatened to fire Martinez and became hostile to Wright unless they stopped complaining about issues in the past with Franken. SMF ¶ 18. Both Wright and Martinez refused to accept this situation. *Id*. The work environment continued down this toxic path in that Franken threatened to take away their home and jobs, because of the complaints. SMF ¶ 19. The hostility, coupled with the lack of proper pay, led Plaintiffs to their final, and only, option: to involuntarily resign from Travellooga. SMF ¶ 19.

Even if this Court was to only focus on the non-payment of wages, such conduct by an employer can be considered "adverse employment action" to support a constructive discharge claim. *Traweek v. GLOBAL SOLUTIONS & LOGISTICS LLC*, (N.D. Alabama 2015); *see also Penn. State Police v. Suders,* 542 U.S. 129, 134 (2004) (finding a cut in pay can provide a basis for alleging constructive discharge); *Bass v. Bd. of Cnty. Comm'rs,* 256 F.3d 1095, 1118 (11th Cir. 2001) (stating in a Title VII case that an adverse employment action can be "conduct that alters the employee's compensation"). Plaintiffs certainly submit testimony that they were not properly paid wages.

Based on the evidence presented, there are disputed issues of fact on the reasons why Plaintiffs left their employment from Travellooga. Such disputes should be submitted to a jury to determine whether they give rise to support a constructive discharge.

**C. Plaintiffs' Complaints Are Causally Related To The Constructive Discharge**

The causal connection element is broadly construed so that "a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001). In *Pennington*, the Eleventh Circuit stated that the causal link can be satisfied when the employee "has adduced evidence sufficient to create an inference" that the employer's decision was

influenced by the employee's engagement in a statutorily protected action. *Id.* at 1268. The Eleventh Circuit has gone even further, stating that "[w]e have plainly held that a plaintiff satisfies this element if [s]he provides sufficient evidence that the decision-maker became aware of the protected conduct, and that there was a close temporal proximity between this awareness and the adverse employment action." *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999)

Generally, claims of constructive discharge concern ongoing conduct, rather than a single event. *TZOC v. MAX TRAILER SALES & RENTAL, INC.* (S.D. Fla. 2015) (FLSA case) *citing to U.S. E.E.O.C. v. Dillard's, Inc.,* No. 6:07-cv-1496-Orl-19GJK, 2009 WL 789976, at *13 (M.D. Fla. 2009) (same finding) (Title VII case). Here, Plaintiffs were both subject to ongoing, harassing conduct after the initial November 2012 complaint. SMF ¶ 10, 18-19. Further, the time period between the initial complaint and the involuntary resignation was no more than three months. *Id.* The issue of causality should be submitted to a jury to decide whether the complaints motivated the harassment and threats that underpin the constructive discharge claim.

**CONCLUSION**

Based on the evidence presented, and in the light most favorable to the Plaintiffs, Defendants have failed to provide their arguments as a matter of law. There are a plethora of disputed issues that warrant submission to a jury. Plaintiffs respectfully request that this Court enter an Order denying Defendants' Motion in its entirety.

Dated: October 5, 2015

Respectfully submitted,

**REMER & GEORGES-PIERRE, PLLC**
Courthouse Tower
44 West Flagler Street, Suite 2200
Miami, FL 33130
Telephone: (305)416-5000
Facsimile: (305)416-5005

By:**/s/ Brody M. Shulman**
Jason S. Remer, Esq.
Fla. Bar No.: 0165580
Brody M. Shulman, Esq.
Fla. Bar No.: 092044

## CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:**/s/ Brody M. Shulman**
Jason S. Remer, Esq.
Fla. Bar No.: 0165580
Brody M. Shulman, Esq.
Fla. Bar No.: 092044

**SERVICE LIST:**

Scott M. Behren, Esq.
Behren Law Firm
2893 Executive Park Drive, Suite 110
Weston, FL 33331
Phone: (954) 636-3802
Facsimile: (772) 252-3365
Scott@behrenlaw.com